## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNIFER SCHORNHORST, individually and
as personal representative for the estate of
James A. Schornhorst,

     Plaintiff,

                                          Case No. 07-cv-12700
v.                                      Hon. Gerald E. Rosen

FORD MOTOR COMPANY, a Delaware
Corporation, and MUTUAL OF OMAHA
INSURANCE COMPANY, a Nebraska Company,

     Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT MUTUAL OF OMAHA'S MOTION FOR ENTRY OF JUDGMENT ON THE RECORD, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE RECORD, AND GRANTING DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     February 5, 2009    

PRESENT:    Honorable Gerald E. Rosen
                  United States District Judge

## I.  INTRODUCTION

This ERISA denial of benefits case is presently before the Court on Cross-Motions filed

by Defendant Mutual of Omaha Insurance Company and Plaintiff Jennifer Schornhorst,

respectively, requesting affirmance and reversal of the administrative decision denying Ms.

Schornhorst's request for accidental death benefits.  Separately, Defendant Ford Motor Company

moves for Summary Judgment of Plaintiff's Complaint.  In its prior Opinion and Order, issued

1

on September 30, 2008, the Court held that Plaintiff failed to state a claim for breach of fiduciary duties upon which relief could be granted. The Court now proceeds with respect to the remaining denial of benefits claim.

Having reviewed the parties' respective motions, briefs, and supporting documents, the Court has determined that oral argument is not necessary. Therefore, pursuant to the Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets for the Court's ruling.

## II. <u>BACKGROUND</u>

In its previous Order and Opinion **[Dkt. # 43]** in this case, the Court addressed the Defendants' summary judgment and motion to dismiss and Plaintiff's motion for leave to amend her claim of breach of fiduciary duties. The Court concluded that where Plaintiff brought a civil action seeking relief pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for benefits due under an insurance plan maintained by her husband's employer, she could not separately seek relief under ERISA for breach of fiduciary duty based on the denial of benefits. Because familiarity with that decision is assumed, the Court simply summarizes the relevant facts here.

Plaintiff Jennifer Schornhorst's late husband, James A. Schornhorst, was an employee of Ford Motor Company until the time of his death in an automobile accident on September 28, 2006. During his employment, Mr. Schornhorst elected to participate in a discretionary accident insurance plan (the "Plan") issued through Ford Motor Company by Mutual of Omaha Insurance Company. The Plan provides benefits to a surviving spouse in the event of an accidental death.[1]

---

[1] The Plan is governed by ERISA, and it provides for payment of $ 1,000,000 to the decedent's surviving spouse. The Plan's initial term was effective until June 1, 2009.

2

Following Mr. Schornhorst's death, on or about October 11, 2006, Plaintiff submitted a claim for

benefits.  In a letter dated January 18, 2007, Defendant Mutual of Omaha denied the claim on the

basis of an Intoxication Exclusion Amendment Rider (the "Rider"). The Rider bears an effective

date of June 1, 2006.[2]  It states, in relevant part:

> The policy or certificate does not cover any loss caused by or contributed to by
> intoxication of an insured person while he or she is operating a motorized vehicle.
> This exclusion does not apply if the loss is caused solely by the actions of another
> person.  For purposes of this exclusion, intoxication means a blood alcohol level
> that equals or exceeds the legal limit for operating a motor vehicle in the state or
> jurisdiction where the loss occurred.

(Def. Mutual of Omaha Mot. for Entry of J., Ex. 1 at 13.)  Mr. Schornhorst's toxicology report

showed that his blood alcohol level was over the legal limit in Michigan.

The Plaintiff alleges that neither she nor her husband was ever provided a copy of the

Rider.  On or around August 17, 2006, two months after the Rider went into effect, Ford Motor

Company published an Accident Insurance Overview—a summary plan description or "SPD" as

required by ERISA—on its intranet system. The publication explained the rights, benefits, and

limitations to coverage under the Plan.  Alcohol-related accidents and deaths were not listed in

the section entitled "What the Plan Doesn't Cover."  That section stated:

> Only losses listed as covered are payable benefits.  Additionally, AD&D benefits
> will not be paid for any losses resulting in any way from:
>
> - Suicide, self-destruction, or attempted suicide, while sane or insane
> - Bacterial infection (except pyogenic infections) resulting solely from
>   injury
> - War or act of war except while outside the U.S. (including its
>   territories and Puerto Rico) on Company business
> - Military service of any country at war . . .

---

[2]  The Plaintiff alleges that the Plan did not contain any exclusion for alcohol-related
accidents when her husband enrolled in April 2006.  The Plan became effective June 1, 2006.

- An insured person's act of aggression, participation in a felonious enterprise, or illegal use of drugs
- Injury sustained while engaged in or taking part in aeronautics and/or aviation of any type . . . .

(Def. Mutual of Omaha Mot. for Entry of J., Ex. 3 at 50.)

On April 24, 2007, Plaintiff appealed the denial of the claim, and again requested payment of the benefits due under the Plan. Mutual of Omaha replied via letter dated May 25, 2007, reiterating its denial of the claim, citing the Rider as the sole reason.

Plaintiff filed her Complaint in this action on June 26, 2007. The Court now proceeds to evaluate the Motions with respect to Plaintiff's claim for payment of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

### III.  ANALYSIS

**A.  Standard and Scope of Judicial Review in ERISA Cases**

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The standard of review for ERISA denial of benefits challenged under Section 502(a)(1)(B) is *de novo*, unless the benefit plan gives the plan administrator discretion to determine eligibility for benefits or construe plan terms. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57 (1989); Haus v. Bechtel Jacobs Co., 491 F.3d 557, 561 (6th Cir. 2007). In the latter instance, the Court must apply the highly deferential "arbitrary and capricious" standard of review to the administrator's benefit determination. Haus, 491 F.3d at 561.

4

The parties dispute whether Mutual of Omaha was granted discretionary authority under the Plan.  The Sixth Circuit requires that a plan contain a "*clear* grant of discretion [to the administrator] to determine benefits or interpret the plan."  Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1994) (emphasis in original).  Whether a plan provides its administrator or trustees with discretionary authority does not "hinge[] on incantation of the word 'discretion' or any other 'magic word.'"  Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc) (internal citations omitted).  As this Court stated, "[s]uch a clear grant of discretion may be found where the plan provides that the insurer or plan administrator has the ability to require the claimant to furnish all required proofs, 'written proof' or 'satisfactory proof' of a [claim] is sufficient to give the insurance company discretion under Firestone to trigger the arbitrary and capricious standard."  Bragg v. ABN AMRO North America, Inc., 579 F. Supp. 2d 875, 889 (E.D. Mich. 2008) (citing Perez, 150 F.3d at 555; Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380-81 (6th Cir.1996)).

In this case, Mutual of Omaha argues that the Plan contains the requisite grant of discretion to the administrator, where the Plan states:

> Benefits payable under the policy for any loss other than Permanent Total Disability Insurance will be paid immediately upon receipt of *due written proof of loss*.

(Def. Mutual of Omaha Mot. for Entry of J., Ex. 1 at 8) (emphasis added).  In addition, Mutual of Omaha submits that the document outlining claim review and appeal procedures, attached to both the policy and the certificate, clearly vests discretionary authority for claim review in Mutual of Omaha. (See id. at 28–29, 13–14) ("[O]nce We [i.e., Mutual of Omaha] receive information necessary to evaluate the claim, We will make a decision within the time periods set

5

forth below.").[3]  The parties agree that the Plan allows for Mutual of Omaha to request and receive proof of a claim before an individual is entitled to receive benefits.

While at least one decision in the Eastern District of Michigan has held that where the insured must submit "due proof" of loss there is a clear grant of discretionary authority, see Hall v. Life Ins. Co. of North America, 151 F. Supp. 2d 831, 834 (E.D. Mich. 2001), the Sixth Circuit has also held that a requirement of "written proof of loss, without more" is insufficient.  See Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 808 (6th Cir. 2002); Chiera v. John Hancock Mutual Life Ins. Co., 3 Fed. Appx. 384, 390 (6th Cir. 2001) ("That Defendant must be provided with 'written proof of loss' does not explicitly grant it discretionary authority.").  The term "due proof," as with the term "satisfactory evidence," signals that the recipient of the proof will make a determination as to its sufficiency to determine coverage under the terms of the contract.  See Perez, 150 F.3d at 555.  Indeed, the Sixth Circuit has cited with approval at least one case that found discretionary authority where the policy language made reference only to "due proof."  See id. at 556 (citing Patterson v. Caterpillar, Inc., 70 F.3d 503, 505 (7th Cir. 1995)); see also Bollenbacher v. Helena Chem. Co., 926 F. Supp. 781, 786 (N.D. Ind.1996)

---

[3]  Plaintiff argues that by relying on the "Claim Review and Appeal Procedures"attached to the policy and the certificate, Mutual of Omaha is relying on extra-policy documents to establish its discretionary authority under the Plan.  However, the Plan expressly incorporates both the policy and the certificate, as well as attached documents, into the contract between the parties:

> The coverage and individual provisions for this policy are in the certificate of insurance and any attached rider(s).  A copy of the certificate(s) and any attached rider(s) when attached to this policy is (are) made a part of it. . . . The entire contract consists of this policy . . . and any papers made a part of it, including, if any, riders and the Policyholder's application.

(Def. Mutual of Omaha Mot. for Entry of J., Ex. 1 at 50.)

6

(benefits paid "[w]hen the Company receives proof that the individual is disabled" held sufficient).  Therefore, this Court finds the relevant Plan language confers upon Mutual of Omaha the discretionary authority to make benefit determinations.  The Court will accordingly apply the arbitrary and capricious standard.   Under this standard, review is confined to the administrative record as it existed when the plan administrator made its final decision.  See Moon v. Unum Provident Corp., 405 F.3d 373, 378–79 (6th Cir. 2005).

Ford Motor Company separately moves for summary judgment.  Because it does not seek judicial review of the ERISA benefit decision, but instead seeks judgment as a matter of law with respect to plaintiff's § 1132(a)(1)(B) claim, Ford Motor Company argues that summary judgment is appropriate.  Pursuant to Federal Rule 56, a party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56.  Regardless of whether Ford Motor Company has invoked the proper procedural mechanism in an ERISA denial of benefits case, the Court grants Ford's motion for summary judgment because Plaintiff does not assert her claim of denial of benefits against Ford.  Rather, Plaintiff's claims against Ford Motor Company were limited to Count II of the Complaint for breach of fiduciary duty, which has already been dismissed.  Nevertheless, Plaintiff suggests that Ford's role in failing to notify Plan participants of the Rider materially limited benefits under the Plan, which in turn contributed to Mutual of Omaha's decision to deny of benefits.  Therefore, the Court considers Ford's arguments and Plaintiff's counter-arguments to the extent that they are pertinent to the denial of benefits claim.

**B.     Mutual of Omaha Did Not Act Arbitrarily or Capriciously in Denying Plaintiff's Claim for Accidental Death Benefits.**

The arbitrary and capricious standard is a highly deferential one.  See Glenn v. MetLife, 461 F.3d 660, 666 (6th Cir. 2006).  Under this standard, the Court will uphold the administrator's decision so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."  Haus, 491 F.3d at 561–62.

Plaintiff claims that the Defendants' failure to adhere to ERISA notice and disclosure requirements—to provide an accurate summary plan description and to notify the Plan participants of the Rider—effectively rendered the Rider unenforceable, and that, consequently, Defendants' reliance on the Rider to deny benefits was arbitrary and capricious, and requires that she be paid the benefits.  Plaintiff separately argues that even assuming that the Defendants had no obligation to notify Plan participants of the Rider, either the SPD trumps the Plan or Defendants are estopped from enforcing the Rider.  Finally, Plaintiff argues that the Defendants improperly applied the Rider to the facts of this case.

### 1.      Defendants had an obligation under ERISA's notice and disclosure requirements to provide an accurate SPD.

By statute, ERISA plans "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).  In addition to this main plan document, ERISA plan participants must be provided a written summary plan description "sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).  The SPD must reflect circumstances which may result in disqualification, ineligibility, denial or loss of benefits.  Id.; 29 C.F.R. § 2520.102-3(l).  Moreover, the Sixth Circuit has held that "[t]he provision of ERISA which requires the publication and distribution of an 'accurate' summary plan description, when taken

8

in conjunction with the fiduciary duties of the employer, imposes an analogous 'duty to correct'
upon an employer if and when the employer knows or should know that a statement in a
Summary Plan Description has become misleading to potential participants."  McAuley v.
International Business Machines Corp., Inc., 165 F.3d 1038, 1046 (6th Cir. 1999) (citations
omitted).

After a company validly amends a plan, administrators need not immediately update and
republish the SPD; rather, ERISA Section 104(b) provides that:

> (1) The administrator shall furnish to each participant, and each beneficiary
> receiving benefits under the plan, a copy of the summary plan description, and all
> modifications and changes referred to in section 1022(a)(1) of this title–
>
> > (A) within 90 days after he becomes a participant, or (in the case of a
> > beneficiary) within 90 days after he first receives benefits, or
> >
> > (B) if later, within 120 days after the plan becomes subject to this part. . . .
> > If there is a modification or change described in section 1022(a) of this
> > title . . ., a summary description of such modification or change shall be
> > furnished not later than 210 days after the end of the plan year in which
> > the change is adopted to each participant, and to each beneficiary who is
> > receiving benefits under the plan.
>
> (2) The administrator shall make copies of the latest updated summary plan
> description and the latest annual report . . . available for examination by any plan
> participant or beneficiary in the principal office of the administrator and in such
> other places as may be necessary to make available all pertinent information to all
> participants (including such places as the Secretary may prescribe by regulations).
> . . .
>
> (4) The administrator shall, upon written request of any participant or beneficiary,
> furnish a copy of the latest updated summary, plan description, and the latest
> annual report, any terminal report, the bargaining agreement, trust agreement,
> contract, or other instruments under which the plan is established or operated. . . .

29 U.S.C. § 1024(b).

The parties do not dispute that at all relevant times, from the effective date of the Policy

until the accident, the SPD provided to Mr. Schornhorst did not contain a reference to any type

of exclusion for alcohol-related automobile accidents.  Similarly, the parties concede that neither

Ford Motor Company nor Mutual of Omaha provided Mr. Schornhorst with written or electronic

notice of the amendment.[6]  Finally, although Plaintiff presents evidence indicating that the

Defendants discussed adopting the Rider as early as September 2005 and received approval to

incorporate it into the Plan as early as January 2006, no notice of the amendment or of its

planned adoption was ever given to Plan participants.[7]  Neither Ford Motor Company nor Mutual

of Omaha provided the decedent an SPD that reflected an intoxication exclusion or any other

---

[6] Ford Motor Company points out that Mr. Schornhorst did not access the SPD or otherwise request plan information from Ford Motor Company from the time the documents were first published until his death on September 28, 2006.  This is not relevant for purposes of establishing the Defendants' obligations under the ERISA notice and disclosure requirements, but is addressed below in the context of Plaintiff's equitable estoppel claim.

[7] Plaintiff separately alleges that because neither Ford Motor Company nor Mutual of Omaha provided evidence of a written agreement amending the policy, they "failed to follow their own policies" and consequently the Plan was not properly amended.  (Pl. Br. in Resp. to Mutual of Omaha's Motion for Entry of Judgment.)  An administrator may amend a plan only through formal procedures specified in the plan documents.  29 U.S.C. § 1102(b)(3).  The Plan states:

> No agent has authority to change the policy or to waive any of its provisions.  No change in the policy shall be valid unless evidenced by endorsement thereon, or by amendment hereto signed by the Policyholder [i.e. Ford] and by [an] executive officer of the Company [i.e. Mutual of Omaha].  The policy may be changed at any time or times by written agreement between the Company [i.e. Mutual of Omaha] and the Policyholder, without the consent of any other person.

(Def. Mutual of Omaha Mot. for Entry of J., Ex. 1 at 19.)  Mutual of Omaha asserts that Ford Motor Company "received a copy of the Rider from Mutual of Omaha on or about June 1, 2006, its effective date, and combined the Rider with the other Policy documents (i.e., the Policy and the insurance certificate)."  (Def. Mutual of Omaha Mot. for Entry of J. 14-15).  The Court concludes that this, along with the signed and dated Rider as incorporated in the Plan documents, is sufficient under the terms of the contract to constitute evidence of a valid amendment.

form of notice of the change in coverage, in violation of the foregoing statutory scheme.[8]  The

_____

[8]  Mutual of Omaha argued that as claims administrator it had no duty to notify plan participants of the Rider.  The insurer argues that because it is "only a claims administrator relative to the Plan," and does not communicate with Plan participants except with regard to an assignment of coverage or processing claims, its fiduciary duties under ERISA do not include notice of changes to the Plan.  Rather, the insurer argues that its fiduciary duty to plan participants is limited by its role, citing ERISA § 3(21)(A), which provides:

> [A] person is a fiduciary with respect to a plan *to the extent*
>
>> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphasis added).  Generally, "[w]hen an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary.'"  Libbey-Owens-Ford Motor Company Co. v. Blue Cross & Blue Shield Mut. of Ohio, 982 F.2d 1031, 1035 (6th Cir. 1993).  However, the Sixth Circuit has also held that this duty is limited to only those aspects of the plan over which the fiduciary exercises control.  See Grindstaff v. Green, 133 F.3d 416, 426 (6th Cir. 1998).  In Grindstaff, where a bank acted as a directed trustee of an employee stock ownership plan, the court held that the bank had no fiduciary duty under ERISA to investigate the merits of any directives given to it by the plan's administrative committee, in part because it did not have discretion or authority to control those aspects of the plan.  Id.

In this case, far from acting as a directed trustee with respect to a discrete set of investments, Mutual of Omaha had discretionary authority regarding claims, as well as the attendant obligations to interpret the terms of the Plan and determine eligibility for coverage.  Mutual of Omaha argues that the Plan itself did not specifically require that the insurer notify employees of any changes to the coverage, and that Ford Motor Company was generally responsible for maintaining the SPD and providing plan documents through its human resources intranet site.  These facts alone do not establish that Mutual of Omaha as claims administrator was free to disregard the notice and disclosure requirements set out under the statute for administrators generally.  Indeed, the relevant statute makes no distinction between claims administrators and plan administrators.  See 29 U.S.C. § 1024(b).  Moreover, the Sixth Circuit has stated that "the definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee."  Smith v. Provident Bank, 170 F.3d 609, 613 (6th Cir.1999).

This Court declines to adopt Mutual of Omaha's interpretation of its limited scope of obligations to Plan participants.  Instead, because the definition of fiduciary duties under ERISA must be broadly interpreted and because Mutual of Omaha had discretion to administer the Plan, including the authority to grant or deny claims, it also had a duty to ensure that modifications to

11

Rider clearly constitutes a circumstance which may result in denial or loss of benefits, see 29 C.F.R. § 2520.102-3(l).

### 2. Even if Defendants violated their statutory disclosure duties, ERISA does not afford the type of substantive remedy plaintiff seeks—namely a declaratory judgment rendering the provision unenforceable and awarding benefits.

The Sixth Circuit has repeatedly held that a substantive award of benefits is not the appropriate remedy for a violation of the ERISA notice and disclosure requirements in denial of benefits claims. Lewandowski v. Occidental Chem. Corp., 986 F.2d 1006, 1009 (6th Cir. 1993) ("Nothing in [ERISA's civil enforcement provisions] suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information.").

In Lewandowski, a widow filed a suit for damages against the administrator of her husband's retirement plan. 986 F.2d at 1006–07. The administrator failed to provide either the widow or her husband with a summary plan description, updates and modifications to the SPD, a statement of vested benefits on termination, and a summary of post-termination material plan modifications, as required by ERISA Sections 101, 102, 104 and 105. Id. at 1007. Under the retirement plan, a vested participant normally would receive benefits only if that participant lived until normal retirement age. Id. The plan also offered less risky pre-retirement age benefits, but because he was never informed of such options, the plaintiff's husband never opted for them. Id. He passed away shortly before reaching retirement age having made no election for pre-retirement age benefits. Id. His widow sued, alleging that because of the administrator's

the Plan were properly communicated to Plan participants. To interpret the ERISA provisions otherwise would effectively shield claims administrators, who exercise broad discretion in processing claims, from any of the obligations set out in the notice and disclosure requirements.

violation of the ERISA notice and disclosure requirements her husband "did not know of the risk

inherent in the plan and the avenues available to him for guarding against it." Id.  The Sixth

Circuit concluded that "[b]ecause plaintiff seeks recovery expressly based on defendant's failure

to follow ERISA procedures, she may not recover." Id. at 1009–10.  "ERISA's remedial scheme

presents a detailed, reasoned compromise between plan participants' needs for adequate

disclosure and the disincentives expansive liability for nondisclosure might present to employers

considering institution of a retirement plan." Id. at 1010.  See also Del Rio v. Toledo Edison Co.,

130 Fed. Appx. 746, 752 (6th Cir. 2005) (holding that even if the plaintiff could show that the

administrator had failed to provide an SPD or other plan documents for a long-term disability

insurance plan, plaintiff did not have a substantive remedy under ERISA's statutory scheme);

Callery v. United States Life Ins. Co., 392 F.3d 401, 405–06 (10th Cir. 2004) (holding that

injunctive relief compelling the payment of the policy proceeds is not an available remedy,

where administrator failed to provide plaintiff with an SPD and continued to accept life

insurance premiums despite the fact that plaintiff no longer met eligibility requirements); Lake v.

Metro. Life Ins. Co., 73 F.3d 1372, 1378 (6th Cir. 1996) (holding that violations of the

procedural sections of ERISA do not give rise to claims for substantive damages); DiMarco v.

Michigan Conf. of Teamsters Welfare Fund, 861 F. Supp. 600, 609–10 (E.D. Mich. 1994)

(holding that although a welfare fund may be obligated to provide an SPD spelling out plan

procedures to one-time death benefit beneficiaries, a failure to do so does not yield an award of

benefits).  Ultimately, Lewandowski stands for the proposition that a beneficiary's remedies for a

breach of ERISA's notice and disclosure requirements are limited to the forms of equitable relief

enumerated in Section 502(c) of the statute.  See DiMarco, 861 F. Supp. at 610.[9]  Notably, the

scheme of civil penalties outlined in Section 502(c) provides no remedy for an SPD that does not

enumerate every exception in the underlying plan or a failure to notify participants of

amendments.  See 29 U.S.C. § 1132(c).

Plaintiff's claim for benefits, like the claim in Lewandowski, is tantamount to a claim for

damages: Plaintiff seeks an award of benefits notwithstanding the fact that her claim falls outside

the coverage delimited in the Plan at the time of her husband's death.  An award of benefits

based solely on a breach of the notice and disclosure requirements is clearly inappropriate given

the foregoing case law.

> **3.    The Rider is not rendered unenforceable by Defendants' failure to provide notice of the amendment.**

At the close of her breach of fiduciary duties arguments, Plaintiff suggests that she is

entitled to declaratory judgment rendering the Rider unenforceable, citing Varity Corp. v. Howe,

516 U.S. 489, 116 S.Ct. 1065 (1996) and Hoeberling v. Nolan, 49 F. Supp. 2d 575 (E.D. Mich.

1999).  Neither case stands for the applicability of this form of remedy in the present

circumstances.

In Varity, the Supreme Court held that the equitable relief provision in ERISA Section

502(a)(3)(b) is "broad enough to cover individual relief for breach of a fiduciary obligation."

---

[9]  The Sixth Circuit noted an exception to this general rule in cases where the employer "acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary."  Lewandowski, 986 F.2d at 1009 (quoting Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir. 1991)).  Nothing in the record presently before the Court supports a finding that the distribution of an incomplete SPD and the failure to notify plan participants of the Rider were in bad faith.  The Defendants did not actively conceal the Rider.  On the contrary, the Rider, once incorporated with the Plan, appears to have been readily available on the human resources intranet site.

516 U.S. at 510, 116 S.Ct. at 1076.  Because the defendants conceded the remedy issue on appeal, the Supreme Court did not reach the question of whether the Eighth Circuit's remedy—ordering reinstatement of the plaintiffs into the plan—was appropriate.  Thus, Varity only stands for the availability of a breach of fiduciary duty cause of action for individuals, without providing further guidance with respect to the appropriate remedy where an administrator is found to have breached that duty.

Similarly in Hoeberling, the court engaged in a lengthy analysis of whether an individual bringing an ERISA breach of fiduciary duty claim may seek monetary damages.  49 F. Supp. 2d at 580.  The court concluded that the remedies available are limited to those expressly enumerated in ERISA's provisions for "equitable relief," thus excluding monetary damages.  Id.  Although Hoeberling stands for the principle that equitable relief under ERISA's statutory scheme includes both injunction and restitution, the remedy Plaintiff now seeks—declaratory judgment rendering the challenged exclusion unenforceable—is merely an end run around the foregoing case law to reach an award of benefits to which she is otherwise not entitled.  Neither Varity nor Hoeberling support this backdoor remedy, particularly where Lewandowski and the case law discussed above expressly forbids substantive remedies for far more egregious breaches of ERISA notice and disclosure requirement than the type of breach at issue here.

Viewed differently, Plaintiff's argument may be interpreted as resting on a theory of waiver, though Plaintiff does not expressly frame it as such.[10]  She contends that because

---

[10] While not a waiver case, Plaintiff invokes Phillips v. Teamster Local 639, 79 F. Supp. 2d 847, 852–53 (N.D. Ohio 2000), where the court declined to enforce an amended pension policy provision because the administrator had failed to follow the required procedures for amending the plan.  Phillips is plainly distinguishable from the case before this Court, in that the Rider here was properly adopted under the terms of the Plan.

15

Defendants failed to provide notice of the new provision they should be barred from enforcing it. The Sixth Circuit has not recognized waiver in the ERISA context.  Waiver is the voluntary or intentional relinquishment of a known right.  17 Lee R. Russ, Couch on Insurance § 239:95 (3d ed. 2008).  The Fourth and the Second Circuits have expressly declined to incorporate the principles of waiver into the common law of ERISA.  See White v. Provident Life & Acc. Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997) (the common law of ERISA "does not incorporate the principles of waiver and estoppel."); Juliano v. Health Maintenance Organization of New Jersey, Inc., 221 F.3d 279, 288 (2d Cir. 2000) ("where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable").  Only three circuits—the Fifth, Seventh and Eleventh circuits—have considered application of the waiver principle in ERISA actions and only one court has applied it.  See Pitts v. Am. Security Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991) (holding that by accepting premiums and paying medical expenses after it had learned of a breach of the policy conditions, insurer waived its right to assert that breach as a defense to coverage); Thomason v. Aetna Life Ins. Co., 9 F.3d 645 (7th Cir. 1993) (declining to apply waiver to bar an insurer from denying coverage under a group policy when it mistakenly notified plaintiff that the coverage on his life insurance policy was extended without cost to him after he suffered a disabling illness and could no longer work); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341 (11th Cir. 1994) (holding insurer did not knowingly and intentionally waive eligibility requirements of its plan when insurer enrolled plaintiff in the insurance program, initially accepted premiums, and converted his life policy upon his request, despite apparent ineligibility).

After reviewing the foregoing case law, the court in O'Connor v. Provident Life and

16

Accident Co., 455 F. Supp. 2d 670, 678–79 (E.D. Mich. 2006) declined to apply the waiver
principle where an ERISA life insurance beneficiary sought benefits beyond those for which her
husband had qualified prior to his death.  In O'Connor, the employer provided the plaintiff's
husband enrollment forms that substantively differed from the underlying group policy.  455 F.
Supp. 2d at 671–74.  The policy plainly stated that the maximum guaranteed death benefit could
not exceed five times the plan participant's earnings.  Id. at 674–75.  The plaintiff's husband
elected coverage on the basis of the faulty enrollment forms and began paying premiums for a
death benefit over twice the amount for which he was actually eligible.  Id. at 673–75.  Upon his
death, the insurer denied the benefits in excess of his actual eligibility under the terms of the plan.
Id.  Because the plaintiff failed to show that the insurance underwriter was aware of her
husband's earnings or knew that the amount of coverage he had chosen exceeded five times those
earnings, the court held that the insurer had not waived its right to assert the ineligibility
provisions.  Id. at 678–79.  The court stated:

> In considering waiver, [Pitts, Thomason, and Glass] uniformly apply the
> requirement that the party seeking to benefit from the waiver argument prove that
> the other party was aware of the facts and chose not to assert the ineligibility at
> the time premiums were accepted.  In this case, there is no dispute that the group
> policy plainly states that the maximum guaranteed death benefit may not exceed
> five times the employee's earnings, additional insurance was offered only if
> evidence of insurability were furnished, and Mr. O'Connor never furnished such
> evidence to the defendant.  The parties also agree that the enrollment form stated
> that premiums would not be deducted from the employee's paycheck unless the
> coverage was approved.  However, the evidence in the administrative record does
> not support the notion that the defendant was aware that Mr. O'Connor had
> applied for coverage that required proof of insurability and waived that
> requirement. Certainly, someone made an error: either the employer made a
> mistake in deducting the premium payments without receiving approval, or the
> defendant received the premiums and simply forgot to insist on evidence of
> insurability.  But there is no evidence that the defendant was aware of the amount
> of the plaintiff's annual earnings and therefore could not know that the amount of
> coverage he elected exceeded five times those earnings.  A receipt of premiums

without explanation from the employer in this case may have appeared to the defendant as a part of normal receipts under the terms of the group life insurance policy. . . . There is no evidence that the defendant was attempting to reap an unjust benefit by extracting premiums from the decedent when it knew it had a defense to coverage and waited until a claim was made before cancelling the excess coverage amount.

455 F. Supp. 2d at 678.

As in O'Connor, in the present case there is insufficient basis for application of the doctrine of waiver. First, it is not clear that, at the time of the denial of Plaintiff's claim for benefits, the Defendants were aware of the incomplete SPD or of the fact that the Plan participants were not on notice of the Rider. Second, there is no evidence that suggests Defendants were trying to reap the benefits of a potentially misleading SPD by enrolling participants who might otherwise have sought more extensive coverage elsewhere. Accordingly, the Court declines to declare the Rider unenforceable on a theory of waiver.

**4.      Defendants are not estopped from enforcing the Rider.**

Distinct from an argument sounding in waiver, Plaintiff asserts that even if Defendants do not have a duty to provide notice of the Rider, they are nevertheless estopped from enforcing the Rider based on the coverage stated in the SPD. She cites two pre-ERISA cases: Clauson v. Prudential Insurance Co. of America, 195 F. Supp 72 (D.C. Mass. 1961) and Parks v. Prudential Insurance Co. of America, 103 F. Supp. 493 (D.C. Tenn. 1951), affirmed per curiam, 195 F.2d 302 (6th Cir. 1952) in support of this theory. However, more recent ERISA case law indicates that Plaintiff has failed to satisfy the basic elements of an equitable estoppel claim.

In Armistead v. Vernitron Corp., 944 F.2d 1287, 1298 (6th Cir. 1991), the Sixth Circuit wrote that ERISA authorizes the courts "to fashion a body of federal common law to enforce the agreement[s] that these statutes bring within their jurisdiction." The court held this body of

18

federal common law includes equitable estoppel.  Armistead, 944 F.2d at 1298.  To bring a

cognizable equitable-estoppel claim, a plaintiff bears the burden of showing that the employer or

plan administrator made fraudulent representations to the participant, that the participant was

unaware of the true facts behind the representations, and that the participant detrimentally and

justifiably relied on the representations.  See Crosby v. Rohm & Haas Co., 480 F.3d 423, 431 (6th

Cir. 2007).

Plaintiff cannot satisfy these requirements.  First, the record does not indicate that the

incomplete SDP and failure to notify participants of the Rider rises to the level of fraud, "intended

deception or such gross negligence . . . as to amount to constructive fraud."  Trustees of Michigan

Laborers' Health Care Fund v. Gibbons, 209 F.3d 587, 591 (6th Cir. 2000) (internal quotation

marks and citations omitted).  Second, Plaintiff cannot establish that she detrimentally and

justifiably relied on the SPD where neither she nor her husband accessed or requested any Plan

documents during the relevant period.  Even if Plaintiff and her husband were "extremely

conscientious with regard to insurance," (see Pl. Reply Br. in Supp. of Mot. for Summ. J. as to

Ford Motor Company 5), the terms of the Plan were clear, making Plaintiff's alleged detrimental

reliance on an incomplete SPD at the time of enrollment unreasonable.[11]  Plaintiff's suggestion

that but for an apparent reliance on the SPD Plaintiff and her husband would have enrolled in a

---

[11]   The Court notes separately that the Sixth Circuit does not require a claimant who has
been misled by an SPD to prove detrimental reliance for purposes of applying the judge-made
Edwards rule discussed below.  Edwards v. State Farm Mut. Auto. Ins. Co., 851 F.2d 134,
136–37 (6th Cir. 1988) (holding only that where the employer "should have realized that the
explicit language of the Summary could or would have caused [the plaintiff] and similarly
situated unsophisticated lay employees to rely upon [the employer's] inadvertent
misrepresentation to their detriment" the Summary controls).  In the context of an equitable
estoppel claim however, the Court must be satisfied that each of the required elements has been
met including detrimental reliance.

different accidental death insurance policy is conjectural at best, where the Plan was the sole discretionary benefit of its kind provided to Ford employees.  The Court declines to apply equitable estoppel doctrine to this case.

**5.      The SPD does not prevail over the terms of the Plan.**

The Sixth Circuit has held that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." Edwards v. State Farm Mut. Auto. Ins. Co., 851 F.2d 134, 136 (6th Cir. 1988); see also Helwig v. Kelsey-Hayes Co., 93 F.3d 243, 247 (6th Cir. 1996) ("[I]t is the employer's duty to put employees on notice of their rights under the plan, and if they fail to adequately do so, *they will be precluded from enforcing Plan language* which conflicts with summary description language to the detriment of employees.") (emphasis added).  In Haus v. Bechtel Jacobs Co., LLC, 491 F.3d 557 (6th Cir. 2007), the court explained:

> The principle underlying our decision in Edwards, and the summary plan disclosure obligations contained in ERISA § 1022, is ultimately one of pragmatic fairness. When an employer distributes a document that purports to summarize an employee's benefit information, a lay beneficiary should logically be able to rely on that summary rather than combing through the often nearly incomprehensible plan itself. . . . Where an employer fails to satisfy the disclosure obligations contained in section 1022, such that the information contained in a summary plan description is in conflict with that of the plan itself, it is logical that the courts enforce the terms of the summary plan. Moreover, such a rule comports with the legislative intent underlying ERISA, which makes clear that, "[i]t is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets. H.R.Rep. No. 93-533, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4646.

491 F.3d at 565.

However, the Sixth Circuit has also held that Edwards "requires more than an inconsistency of terms. The SPD and the plan must directly conflict."  Valeck v. Watson Wyatt &

20

Co., 92 Fed. Appx. 270, 2004 WL 500985 at *2 (6th Cir. March 11, 2004); see also Garst v.

Wal-Mart Stores, Inc., 30 Fed. Appx. 585, 2002 WL 409414, *6 (6th Cir. Mar.12, 2002)

("reliance on Edwards was misplaced when there was nothing to indicate a conflict between the

terms of the SPD and those of the underlying ERISA plan"); Anderson v. Mrs. Grissom's Salads,

Inc., 221 F.3d 1333, 2000 WL 875365, at *5 (6th Cir. Jun.19, 2000) ("Edwards requires more

than inconsistency; rather, the SPD and the Plan document must directly conflict.").

 Although this Court has noted that "where an SPD entirely omits a requirement or

limitation that is set forth in the underlying plan document, the courts have routinely concluded

that the SPD conflicts with the plan," Citizens Ins. Co. of America v. Pitney Bowes Software

Systems Employee, 508 F. Supp. 2d 587, 596 (E.D. Mich. 2007), the Sixth Circuit has also stated

that "language in a plan summary that is *merely ambiguous* should not be permitted to trump

*unambiguous language in the plan itself*, particularly where participants receive both the plan and

the summary in a single package." Foltice v. Guardsman Prods., Inc., 98 F.3d 933, 938 (6th Cir.

1996).

 In this case, the difference between the SPD and the Plan is not a direct conflict and the

SPD should not trump the unambiguous terms of the Plan. The policy basis of Edwards, i.e., the

inequity of inducing employee reliance on the plan summary when it was the company's only

communication of a plan's provisions, is not applicable where, as here, participants were provided

both copies of the SPD and the unabridged Plan documents at all times. Moreover, although

imperfect, the SPD in this case does not "mislead employees into thinking that they have a right

to benefits when other documents obliquely negate those rights." See Helwig, 93 F.3d at 250.

Instead, the Plan directly and explicitly sets out an exclusion while the SPD states that it will only

21

provide benefits for "covered accidents." (See Def. Mutual of Omaha Mot. for Entry of J., Ex. 3 at 56.)  The Court declines to permit the ambiguous or incomplete terms of the SPD trump the wholly unambiguous terms of the Plan.  Thus, Mutual of Omaha did not act arbitrarily or capriciously in relying on the Rider, rather than the SPD, to deny benefits.

   **6.    Mutual of Omaha properly applied the Rider as basis for denying Plaintiff benefits.**

   Mutual of Omaha denied coverage for Mr. Schornhorst's death because its investigation revealed he was intoxicated at the time he was operating his vehicle, a risk expressly excluded by the Rider.  The parties do not dispute that Mr. Schornhorst's blood alcohol level was over the legal limit at the time of the accident.  However, Plaintiff contends that Defendants have made no evidentiary showing that the Rider applies to Plaintiff's loss, because they failed to show that the intoxication proximately caused the accident.

   Defendants are not obligated to show that Mr. Schornhorst would not have struck the stopped truck had he not been intoxicated.  Plaintiff's reliance on Hastie v. J.C. Penney Life Ins. Co., 115 F.3d 895 (11th Cir. 1997), is inapposite.  Hastie is an Eleventh Circuit case interpreting Florida insurance law.  By contrast, the Sixth Circuit does not apply a "but for" test under the arbitrary and capricious standard for ERISA denial of benefits claims.  Rather, the Sixth Circuit has held that district courts "must accept the administrator's rational interpretation of the plan even in the face of an equally rational interpretation offered by the participants." Gismondi v. United Tech. Corp., 408 F.3d 295, 298 (6th Cir. 2005).  Therefore, this Court need only conclude that, by the terms of the Plan, Mutual of Omaha's finding—that Mr. Schornhorst's death was "caused by or contributed to by intoxication" while operating a motor vehicle—is a rational interpretation of the Plan.  This Court finds that it is and that Mutual of Omaha has provided a

22

reasoned explanation of its decision.  Thus, the denial of benefits was neither arbitrary nor capricious.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Mutual of Omaha's Motion for Entry of Judgment  **[Dkt. # 30]**  is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion Summary Judgment and Judgment on the Record **[Dkt. # 23]** is DENIED.

IT IS FURTHER ORDERED that Defendant Ford Motor Company's Motion for Summary Judgment  **[Dkt. # 32]** is GRANTED.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  February 5, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry_____
Case Manager